Carr, J.
It was strenuously urged by the appellants’ counsel, that we cannot sustain this decree, without establishing it as a general doctrine, that the power of equity to decree a specific performance of an agreement for the sale of real estate, at the instance of the vendor, must in all cases depend on the life of the vendor; and the conclusion was reached thus—If you say, that where the vendor dies before conveyance, his heirs cannot compel the vendee to a specific performance, because they *185 can be called on for a deed with special warranty only, while their ancestor was bound for a general warranty, you must go on and say, that neither can the vendee compel the heirs of the vendor to a specific performance, because it is a settled rule of equity, that in all such cases, the remedy must be mutual; and thus, you come to the doctrine, that the contract of the ancestor does not bind the heir, to whom the land descends. For myself, I must say, that I can come to no such doctrine ; for the cases clearly shew, that if a man owning land contract for the sale of it, and die before a conveyance executed, his heir at law will be decreed to perform the agreement in specie, even though not named in the covenant. The cases cited by Sugden (p. 145.) fully support this. Thus, in Gell v. Vermedun, 2 Freem. 199. the defendant’s ancestor, to whom he was heir, articled in his lifetime, for the sale of certain lands, which by the articles he covenanted to convey, but did not covenant for him and his heirs; and the question was, whether the heir should be bound to perform this agreement ? And held, that he should, inasmuch as his ancestor, after the sealing of the articles, was in the nature of a trustee for the plaintiff’ of those lands, which trust with the lands descended to the heir; and decreed accordingly : citing the case of Stevens v. Baily, Nels. 106. where tenant pur auter vie to him and his heirs, articled for a sale, and died; although this is such an estate as is not assets for the heir, yet he was here decreed to execute this agreement. Other cases are cited in the notes to this case, by the editor. I agree also, that a contract must be mutual, otherwise equity will not execute it; that is, both parties must by the agreement have a right to compel a specific performance, according to the advantage which it might be supposed they were to derive from it. Bromley v. Jeffries, 2 Vern. 415. Armiger v. Clark, Bunb. 111. Lawrence v. Butler, 1 Sch. & Lef. 1-3. are cases*of refusal to execute contracts for want of *186 mutuality. But if there be a mutuality of remedy at the time of the contract being entered, into, that is sufficient ,* for, in such a case, it will be no objection to decreeing a specific performance, in favour of the plain-that by a subsequent contingent event, it could not be enforced against him; see lord HardwicJce’s opinion in Stapilton v. Stapilton, 1 Atk. 10. Thus, in the case before us, if by the contingent event of the death of Moore, before making the conveyance, it should be considered, that the specific execution could not be enforced against his vendee, because he could not get the title he contracted for, it would not follow, that the vendee could not enforce such specific execution against the heirs of the vendor; for we know, that if A. has contracted to sell B. land, and to make him a perfect title, he must be able to shew such title, or he cannot enforce a specific execution; while, in the same case, B. may enforce a specific execution against A. if he is willing to take his defective title. I state this to shew, that the rule of mutuality does not apply to such cases as these.
Let it not be supposed from these remarks, that I mean to decide the question, whether a specific execution of a contract for land, can or cannot be enforced against the vendee, where the vendor is dead. I mean to give no opinion on the point; but have said thus much to shew, that while I did not dissent from the general positions taken by the counsel for the appellants, I could not agree with his conclusions in all their latitude. I shall now state the particular and special grounds (not touching these general doctrines) on 'which I think the injunction was properly dissolved.
When the vendee had completed his payments, he had a clear right to demand his title. The bill tells us,, that the administrators offered to procure a deed with special warranty from all the surviving children of the vendor, but he refused this, unless the title of the vendor’s infant grandchildren was also obtained. If upon
*187 this refusal, the administrators had at once filed their bill, claiming the purchase money as their fund, making the vendee, and all the vendor’s heirs, parties de_ “ , . . xendants, and pra.ymg a specific execution; tlie question would have been fairly raised, whether this was a proper case for such decree; and the court of equity, having possession of the subject, would, until it was disposed of, have prevented the vendee from suing on his covenant, on the ground, that in a case proper for the action of both courts, that which first gets it, will hold it. But instead of this, the administrators contented themselves with the offer they had made. The vendee then had to choose his own path: he might sue in equity for a title, or at law for damages: he chose the latter; and proving to the satisfaction of the law tribunal, that the covenant of the vendor was broken, he recovered his purchase money with interest. And now, for the first time, the administrators think of filing their bill, and bringing the subject into equity. I think they have come too late. We cannot in the teeth of the judgment at law, deny that the covenant was broken ; nor can we dispute the plaintiff’s right, if not first called into equity, of suing at law for damages. The ground on which equity first assumed the power of giving specific performance of contracts, was (we are told) to aid the defective remedy of the common law. A man bought a tract of land; it pleased his taste, and he wanted it for a residence; after he had paid his money, the vendor changed his mind, refused a title, and the vendee could only sue at law for the money he had paid: equity said, this is not j ustice: if the vendee wants the land, he shall have it in specie. Having gone thus far,—the courts, on the ground of reciprocity, went a step further, and said, that the vendor also should have their aid, if the vendee refused to execute the contract. But they did not say, and could not say, that a vendor might break his covenant, suffer a suit on it at law, take *188 his chance of defence there, and when judgment was ...... . r recovered against him, begin a new race m equity tor a specific execution. In Long v. Colston, Long, considering that Colston had broken his covenant, sued on it at Instead of defending himself there, Colston filed a bill offering a specific execution, and praying that the whole matter might be transferred into equity. The chancellor entertained his bill, enjoined the proceeding at law, and finally gave him the relief he asked, on the broad ground, as judge Roane states, that in cases proper for specific execution, though the party grieved may have elected to proceed at law for damages, yet as he might have resorted to equity for a specific performance, and as in equity remedies ought to be reciprocal, the aggrieving party may compel him to abandon his common law remedy, and hold him down to a remedy for specific performance. This court reversed the decree, dissolved the injunction and dismissed the bill without prejudice. In 'the course of a very strong argument, judge Roane laid down this position (in which the other judges seemed to concur), ‘ ‘ that after a breach, a plaintiff may elect to proceed at law, for reparation in damages, and that he cannot thereafter be compelled to go for the thing in specie, unless he wants it, or unless some particular grounds of equity exist, on behalf of the party breaking the contract, excusing and relieving against such breach, and shewing that, according to the principles of equity, the contract ought nevertheless to be performed in specie.” I can see no particular grounds of equity in this case, rendering it unconscientious in the vendee to hold the judgment he has recovered, nor oppressive to the other side, to refund the money, and keep the land; nothing rendering a specific execution more consonant to the principles of equity in this case, than in any other contract for land. As to the point, that Fitz Randolph retains possession of the land, and. has received the profits, it will be with the court below, *189 when the cause goes back, to do what is right in that matter: this is an appeal from an interlocutory order, merely dissolving the injunction.
Brockenbrottgh and Cabell, J. concurred, cree affirmed. •p. •L,c“